[No. 3,996.]

IN THE MATTER OF THE ESTATE OF JAMES HOLBERT,
DECEASED.

ACCOUNTS OF AN EXECUTOR.—If, by the terms of a will, the executor is directed to keep invested the money belonging to the estate in first-class real estate security, and the executor loans said money upon real estate security which is not good, he cannot, in his account, charge the estate with the expenses of litigation, attorneys' fees, etc.; nor can such items be allowed to the executor in the settlement of his accounts.

IDEM.—In such case the executor, in the settlement of his accounts, is to be charged with the sum lost by the loan; but if the loan was made in good faith, he must not be charged with the stipulated rate of interest upon the sum lost, nor even with the statutory rate of interest, unless it appears that he could, with ordinary diligence, have loaned the money to others at that rate.

IDEM.—In case of such a loan, the advice of his attorney cannot shield the executor from responsibility, if the money was loaned on land already encumbered, and no examination was made of the records, and no abstract was furnished to the attorney upon which his opinion could be had.

APPEAL from the Probate Court, County of San Joaquin.

Frank Rock was the executor of the will of James Holbert, deceased. By the will, the executor was directed to keep invested the money of the personal estate upon first class real estate security for the same. L. T. Carr was retained by the executor as his attorney in the administration of the estate. He was also the attorney for Dexter A. Davis, A. Henderson, and James McNaughton, to procure for them severally, the right to preëmpt three quarter sections of public land, in Stanislaus County. After the preëmptioners had obtained authority from the land department to prove up their respective preëmption claims, and, on the 10th day of August, 1871, the preëmptioners went to the Stockton land office, in San Joaquin County, to make proof and payment to the Receiver. At that time the executor had deposited in the San Joaquin Valley Bank at Stockton, one thousand two hundred dollars, the funds of the estate, which sum he had instructed his attorney to loan in accordance with the directions of the will. The

attorney loaned said sum to the preëmptioners, and took their note, payable to the executor, one year after date, with interest at one and a half per cent. per month, and, to secure the note, the preëmptioners executed and delivered to the attorney, for the executor, a mortgage on the land. No examination was made of the records of Stanislaus County. At the time the mortgage was given there was a mortgage on the land made by said Davis, McNaughton, and Henderson, to one Ward, to secure the payment of a note for two thousand dollars, given by the mortgagors to Ward, in payment of Ward's possessory interest in the land. Ward commenced an action to foreclose his mortgage, and made the executor a party defendant. The executor was advised by his attorney to defend the action, as, in his opinion, the mortgage to Ward was invalid. Ward obtained a decree foreclosing his mortgage, and directing a sale of the premises, and the application of the first proceeds to pay his debt, the costs, and expenses of sale. The next proceeds were to be applied on the debt to the executor. He realized from the sale the sum of four hundred and sixty-eight dollars. On the 6th of January, 1873, the executor filed his annual account. In this account he charged the estate with the following items:

| | |
|---|---:|
| Expenses to Modesto, which was the county seat of Stanislaus County, in attending to the case of *Ward* v. *Rock et al*..................... $ | 12 50 |
| Expenses of L. T. Carr to Modesto and Sacramento ...................................... | 30 00 |
| Attorneys' fees paid Terry and Carr, in case of *Ward* v. *Rock et al.* ......... ............... | 300 00 |
| He also credited himself with the balance due on the judgment against Davis, McNaughton, and Henderson, to wit ...... ............ . | 1,092 00 |

The heirs objected to the allowance of the above items in the account. The Probate Court disallowed the three hundred dollars paid to the attorneys, and the item of one thousand and ninety-two dollars, the balance due on the judgment. This last item was made up of the principal

sum, and interest at one and a half per cent. per month, less the four hundred and sixty-eight dollars. The other items were allowed. The executor appealed from the order.

The other facts are stated in the opinion.

*L. T. Carr* and *J. H. Budd,* for the Appellant.

The loss to the estate, if any, from the loan made by the executor through his attorney to Davis, McNaughton and Henderson, was without any fault on the part of the executor, and he should not suffer the loss, if any. (Probate Act. sec. 217; *Thompson* v. *Brown,* 4 Johns. 629; 3 Barb. 148; *Rayner* v. *Pearsall et al.* 3 Johns. 578.)

An executor honestly acting on professional advice will not be charged with loss resulting from his so acting. (*Vez* v. *Emory,* 5 Vesey, 144; *Thompson* v. *Brown,* 4 Johns. 629.)

The employment of attorneys by the executor in the suit of *Ward* v. *Rock* and others was necessary, and the executor should have been allowed his necessary expenses for the services of his attorneys in that suit. (Probate Act, sec. 219.)

By the Court, WALLACE, C. J.:

1. The loan made by Rock, the executor, through his attorney, to Davis and others, was not made "upon first-class real estate security," as directed by the will. The sum loaned was one thousand two hundred dollars, and the real estate upon which it was loaned, worth no more than two thousand two hundred dollars, was already under mortgage to one Ward for two thousand dollars.

2. The advice of his attorney cannot shield the executor from his responsibility, otherwise clear, on account of this unauthorized loan. The loan was made in the county of San Joaquin, while the mortgaged premises were situated in the neighboring county of Stanislaus. No examination of the records in the latter county was made for the pur-

pose of ascertaining whether or not the title was already encumbered; no abstract was furnished the attorney; there was therefore nothing—no fact submitted to him — upon which his opinion could be had, and the advice of the attorney given under such circumstances, was not the " professional advice " under which the executor can protect himself from liability for loss incurred.

3. The loan having been originally one not authorized by the will, the expenses of litigation, attorney's fees, etc., incurred by the executor in the foreclosure suit subsequently instituted by Ward, cannot be charged against the estate, nor allowed to the executor in the settlement of his accounts.

4. The loan made under the circumstances appearing, while certainly far from prudent in a business point of view, was nevertheless made by the executor in "good faith," as affirmatively appears by the bill of exceptions settled below; and, as observed by Chancellor KENT, it is the habit of the Court to treat with great tenderness trustees acting in good faith. (4 Johns. Ch. R. 627.) The sum loaned was one thousand two hundred dollars; the rate of interest stipulated to be paid by the borrowers was one and one half per cent. per month. The sum collected upon the loan by the executor was only four hundred and sixty-eight dollars. Of course the executor, upon settlement of his accounts, is not to be charged with interest at the rate stipulated to be paid by the borrowers. If such a rule could ever be properly applied, it could only be done in a case where *mala fides* was established, and here, as we have seen, there was none. Nor do we think that, under the circumstances, the executor should be charged with interest, even at the statutory rate. It does not appear by the record that he could, in the exercise of reasonable diligence, have loaned it to others at that rate, or at any rate of interest whatever, during the time it has remained in the hands of the borrowers. The basis of accountability under such circumstances, is the same as though it had been kept on hand by him for the purpose of making a loan, but without the opportunity of doing so, in which case he would not

have been chargeable with interest. The executor should, therefore, have been held liable only for the sum of seven hundred and thirty-two dollars, which is the balance of the loan remaining uncollected after applying the four hundred and sixty-eight dollars actually received by the executor. If, however, any sum exceeding the sum of seven hundred and thirty-two dollars and the actual expenses of the executor, incurred by him in connection with the loan should be hereafter collected by the executor upon the loan made to Davis, the excess is, of course, to be placed to the credit of the estate, and will constitute a new subject of account by the executor.

The order is reversed and the cause remanded, with directions to settle the account upon the basis indicated in this opinion.

Mr. Justice RHODES did not express an opinion.