18 P.(2d) 658

### In re BOYD'S GUARDIANSHIP.

No. 3695.

Supreme Court of New Mexico.

Jan. 23, 1933.

L. S. Wilson, of Raton, for appellant.

H. M. Rodrick, of Raton, for appellee.

HUDSPETH, J.

L. S. Wilson, a member of the bar, prosecutes this appeal from an order of the district court of Colfax county, which holds that a fee of $150, which had been paid him, was full compensation for services rendered in behalf of the incompetent, Maggie Thomas Boyd, at the request of Willis O. Johns, one of her guardians, and rejects his claim for $1,000 additional.

John W. Thomas died testate in the year 1916, and his son, David J. Thomas, and his grandson, Willis O. Johns, were named executors of his will, and testamentary guardians of the property of Maggie Thomas Boyd. They· qualified as executors and guardians in the probate court of Colfax county in the year 1917. Some time later, and before he entered the Army for the World War, Willis O. Johns executed a power of attorney, prepared by appellant, to David J. Thomas, his coguardian and coexecutor, by which he attempted to delegate all his powers and duties as guardian to David J. Thomas, after which he neglected his duties as guardian up to the year 1926 or 1927. In the year 1927 appellant, as attorney for Willis O. Johns as guardian of the property of Maggie Thomas Boyd (jointly with David J. Thomas), filed a petition in intervention for Maggie Thomas Boyd in cause No. 7623, which was a suit instituted by Willis O. Johns, as an individual, against David J. Thomas, as an individual, in which Johns sought an accounting from said Thomas for moneys said to have come into the hands of Thomas as joint executor with Johns of the last will and testament· of John W. Thomas, deceased. The facts alleged in the petition for intervention were substantially the same as those which had been alleged in the orginal complaint filed by Willis O. Johns in that case, and, to the new matter pleaded by David J. Thomas in his answer to said petition in intervention, the intervener filed a reply consisting of a general denial. Findings No. 2 and 3·are as follows:

"2. That the said cause No. 7623 never did reach the stage of final hearing; that no detailed statement of his account was filed by David J. Thomas as to Maggie Thomas Boyd in that cause; that both David J. Thomas and Willis O. Johns were relieved of their posts as guardian prior to the time any detailed statement was filed by said David J. Thomas in that cause as to Willis O. Johns; that David J. Thomas was discharged by the court in this proceeding (No. 7768) for wrongful conduct and neglect of duty, and Willis O. Johns was, by this court in the same cause, given his choice of resigning or being discharged by the court for gross neglect of his duty as guardian, the choice made by him having been to resign, said guardians having been displaced in January, 1928.

"3. That the said cause (No. 7623) was commenced while the will matter (John W. Thomas will) was regularly pending in the Probate Court of Colfax County, New Mexico, and without any effort whatever having been made by Willis O. Johns, as joint executor of the will, as guardian of the property of Maggie Thomas Boyd (jointly with David J. Thomas), or as a devisee and beneficiary under said will, in the Probate Court to have a report or accounting made by said David J. Thomas, by reason whereof the filing of the said petition in intervention in cause No. 7623 was wholly unnecessary and ill-advised; that, in fact, soon after the appointment of John Leonard, as guardian to succeed the said Thomas and Johns, the said petition in intervention was, (with the consent of this court),

withdrawn and steps were regularly taken in said Probate Court resulting in an accounting and settlement of the said estate in that Court, with an order for distribution to said Willis O. Johns and the other distributees; and that, on motion of the plaintiff in said cause No. 7623, the same was dismissed, without ever proceeding further than hereinbefore found."

The court, at the final hearing, made the following statement: "The Court: And in sustaining this order the court desires it to be clear that at the time of the allowance of $150.00 to A. M. Edwards, who was then attorney of record for David J. Thomas, and of $150.00 to L. S. Wilson who was attorney of record for Willis O. Johns, that it was the intent of the court,—who then did not fully understand the situation which had existed through almost ten years following the death of John W. Thomas, with reference to the management and handling of the estate, such information having later come out a little at a time in the several cases tried in this court—to then and there fully compensate both attorneys for all services theretofore rendered in behalf of Maggie Thomas Boyd. The court further desires to say that the decision in this case, which is to be followed by judgment presently to be signed, turns primarily upon the fact that throughout almost the entire ten year period following the death of John W. Thomas, Willis O. Johns had neglected all of his duties to his ward, had neglected to conserve her estate, and to carry out the directions in her behalf made by the will of John W. Thomas, had left the whole of the administration of the property to David J. Thomas, and that the loss which the said Maggie Thomas Boyd had apparently sustained at the time that Mr. L. S. Wilson undertook to represent said Willis O. Johns, and, at his behest, to represent also Maggie Thomas Boyd, was due to the neglect of Willis O. Johns, and that the court, from a full knowledge of that fact, would not feel justified in allowing any sum whatever to the attorney for the said Willis O. Johns and for said attorney employed by said Willis O. Johns to take some action to recover for the said Maggie Thomas Boyd that which rightfully was hers, it being the holding of the court that the said Willis O. Johns should pay for his own neglect and default."

The court also based his ruling upon the proposition that appellant could not maintain an action against the incompetent or her estate for services rendered at the instance of her guardian; that, "if such an application were at all tenable," the claim should have been presented by the guardian. This last proposition seems to be the general rule. In Payne v. Rech, Gdn., 6 Ohio App. 327, a well-considered case, the following appears: "Judge Woerner, in his American Law of Guardianship, at page 185, pertinently observes as follows: 'As a general proposition, guardians cannot by their contracts bind either the person or estate of their wards. Such contracts bind the guardians personally, and recovery thereon must be had in an action against them, not against the ward.'"

In Hunt v. Maldonado, 89 Cal. 636, 27 P. 56, the court said: "The action is to recover an attorney's fee for services rendered to the guardian of a minor in pursuance of a written contract. The action is against the minor. If the guardian made a valid contract with the attorney, he may be held liable, and, if he pays it, and the probate court shall deem the expenditure reasonable and necessary to protect the interests of the ward, it may be allowed from the ward's estate. But it is an expense incurred by the guardian in the performance of his duties for which he is primarily liable." See, also, Tasker v. Cochrane, 94 Cal. App. 361, 271 P. 503; Weber v. Werner, 138 App. Div. 127, 122 N. Y. S. 943; Jennings v. Canady (C. C. A.) 13 F.(2d) 356; Greever et al. v. Barker, 316 Mo. 308, 289 S. W. 586; Aubrey's Estate v. De Lozier, 128 Okl. 79, 261 P. 192; Wilson v. Van Horn, 114 Wash. 109, 194 P. 560; 21 Cyc. p. 99; 28 C. J. 1151; 12 R. C. L. p. 1157.

■ The rights of attorneys against the estates of lunatics are governed by the same principles as apply to similar claims against the estate of an infant. Irvine v. Stevenson, 183 Ky. 305, 209 S. W. 7; Woerner's American Law of Guardianship, p. 471.

■ The appellant argues that his client, Willis O. Johns, should not have been removed as guardian. While this question is beside the issue, it is apparent from appellant's own statement, to the effect that his client had depended upon his uncle, David J. Thomas, an older man, to discharge the duties of executor and guardian until about a year before his removal, to say nothing of the attempt on the part of Johns to invest David J. Thomas with his powers as guardian by the execution of the power of attorney, furnishes ample grounds for the action of the court in demanding his resignation. If one does not expect to discharge the duties of a trust, he should not assume the obligations thereof, and, when Johns was called to the colors, he should have resigned rather than attempt to authorize his coguardian to act for him.

■ The authorities seem practically unanimous in support of the proposition that a ward should not be called upon to pay attorney's fees made necessary by the neglect of the guardian. Steyer v. Morris, 39 Ill. App. 382; Blake v. Pegram, 109 Mass. 541; Matter of Schneider's Estate, 1 App. Div. 39, 36 N. Y. S. 972; Frelick v. Turner, 26 Miss. 393; Cutts v. Cutts, 58 N. H. 602; Pyatt v. Pyatt, 44 N. J. Eq. 492, 15 A. 421; Estate of Moore, 72 Cal. 342, 13 P. 880; Estate of Holbert, 48 Cal. 627; In re Guardianship of Crowell, 27 Hawaii, 439; 1 Ross on Probate Law 766; Woerner's American Law of Guardianship, p. 351.

Other points are argued, but, in view of the foregoing, it will be unnecessary to consider them.

Finding no error in the record, the judgment of the district court will be affirmed; and it is so ordered.

WATSON, C. J., and SADLER, and BICKLEY, JJ., concur.

ZINN, J., did not participate.